# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE WILLIAMS, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:14-cv-00411-AGF |
| DEAN MINOR, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM & ORDER

This matter is before the Court on the petition for a writ of habeas corpus filed by Andre Williams, Sr., under 28 U.S.C. § 2254. On May 6, 2010, Petitioner pled guilty to one count of robbery in the first degree, in violation of Mo. Rev. Stat. § 569.020, and one count of armed criminal action, in violation of Mo. Rev. Stat. § 571.015. The trial court sentenced Petitioner to concurrent 10-year terms of imprisonment.

For federal habeas relief, Petitioner raises the following claims: (1) actual innocence; (2) a violation under *Brady v. Maryland*, 373 U.S. 83, 89 (1963) for failure to disclose exculpatory DNA evidence; (3) deprivation of due process due to official misconduct in the fabrication of evidence; (4) counsel was ineffective for failing to have the DNA evidence in the case independently tested; (5) counsel was ineffective for failing to interview Petitioner's co-defendant, Mark Leachman; and (6) counsel was ineffective for failing to interview alibi witness DeKisha Roddie. ECF No. 1. For the reasons set forth below, habeas relief will be denied.

# BACKGROUND[1]

On November 19, 2009, the Yellowstone Café was robbed by two men, and a witness identified Leachman in a photo lineup as one of the perpetrators. When questioned by police, Leachman named Petitioner as the other participant in the robbery. ECF No. 23-1 at 32-33. On May 6, 2010, Petitioner appeared with counsel and entered guilty pleas to first degree robbery and armed criminal action. During the plea proceeding, the state court advised Petitioner of his rights, including his right to present witnesses and evidence on his behalf. The prosecutor stated that, if the matter went to trial, the State would prove that, at 9:43 p.m. on November 19, 2009, Petitioner and Leachman, acting together, forcibly stole cash from Robin Breen, an agent for the Yellowstone Café in St. Louis County, and that in the course of the robbery, Petitioner displayed a deadly weapon. ECF No. 20-1 at 19-20. The prosecutor stated:

> [T]he testimony at trial would be that the defendants, [Petitioner] and Mark Leachman, were identified as participants for a robbery that occurred on 11/19/09 at Yellowstone Café and that [Petitioner] was the gunman and implicated by physical evidence, that was DNA evidence and Leachman was not armed but identified by a witness.

When asked by the state court whether the prosecutor's statements were "substantially true and correct," Petitioner replied, "Yes." *Id.* He denied that anyone had coerced him into entering a guilty plea or made a promise to him about his sentence. *Id.*

Petitioner was informed that the range of punishment for the robbery charge was 10 years to life imprisonment, and for the armed criminal action charge was 3 years to life

---

[1] The background was set forth in the Hon. Carol Jackson's May 26, 2016 Order (ECF No. 37, *Williams v. Wallace*, No. 4:14-CV-411 (CEJ), 2016 WL 3015162, at *6 (E.D. Mo. May 26, 2016)), which the Court finds properly reflected the record and is substantially repeated here.

imprisonment.  In addition, he was told that the sentences could be imposed concurrently or consecutively.  In exchange for Petitioner's guilty plea, the State recommended sentences of 10 years' imprisonment on each count, to be served concurrently with one another and with the sentence imposed in an earlier case and "any other case currently serving a sentence." *Id*. at 21, 11.

Based on Petitioner's statements under oath, the state court concluded that Petitioner's guilty plea was freely, voluntarily, and intelligently made with a full understanding of his rights, the charges, and the consequences of his plea.  The state court also found that there was a factual basis for the plea and accepted Petitioner's plea to the charges.  *Id.* at 22.  Petitioner waived a presentence assessment, and the state court imposed the sentence recommended by the State.  *Id.* at 23.  The state court then advised Petitioner of his right to seek relief pursuant to Missouri Supreme Court Rule 24.035 and examined Petitioner with respect to the assistance provided by his counsel during the proceedings.  *Id*. at 24.  In response to questions from the state court, Petitioner stated that he had had adequate time to discuss his case with counsel, that counsel and her investigator had done all that he asked them to do, and that he was satisfied.  He again denied being coerced or threatened.  The state court found that there was no probable cause to believe that Petitioner received ineffective assistance of counsel.

On June 5, 2010, Petitioner timely filed a pro se motion for post-conviction relief pursuant to Rule 24.035.  *Id*. at 51-56.  He asserted ineffective assistance claims based on counsel's failure to submit the skull cap found at the scene for DNA testing at an independent laboratory, to contact witness Jennifer Stanley, and to move to withdraw his

guilty pleas as he requested. Court-appointed counsel filed an amended motion and request for evidentiary hearing, asserting claims that plea counsel was ineffective for failing to interview alibi witness Dekisha Roddie and co-defendant Leachman, who would have testified that Petitioner did not participate in the robbery. *Id*. at 68-81.

On December 28, 2010, the post-conviction court denied Petitioner's Rule 24.035 motion without an evidentiary hearing. *Id*. at 83-87. On December 6, 2011, the Missouri Court of Appeals summarily affirmed. *Williams v. State*, 353 S.W.3d 703 (Mo. Ct. App. 2011).

On January 31, 2014, Petitioner sent a records request to the St. Louis County Police Department. Petitioner claims that on February 11, 2014, Petitioner received a response containing a cover letter from an individual identified only as "CD" and a set of documents that included internal communications among employees of the St. Louis County Police DNA unit. Those communications purport to show efforts by investigators and laboratory staff to implicate Petitioner in the robbery by altering the results of DNA tests completed on samples taken from a skull cap found at the scene of the robbery to match with Petitioner's DNA (hereinafter referred to as "Exculpatory Documents").

The Exculpatory Documents form the basis of much of Petitioner's habeas petition which, as noted above, raised the following grounds for relief: (1) actual innocence; (2) a violation under *Brady v. Maryland*, 373 U.S. 83, 89 (1963) for failure to disclose exculpatory DNA evidence; (3) deprivation of due process due to official misconduct in the fabrication of evidence; (4) counsel was ineffective for failing to have the DNA evidence in this case independently tested; (5) counsel was ineffective for failing to interview co-

defendant Leachman; and (6) counsel was ineffective for failing to interview alibi witness DeKisha Roddie. ECF No. 1.

On May 26, 2016, the Hon. Carol Jackson denied Petitioner's habeas petition.[2] *See Williams v. Wallace*, No. 4:14-CV-411 (CEJ), 2016 WL 3015162, at *6 (E.D. Mo. May 26, 2016), rev'd, 696 F. App'x 766 (8th Cir. 2017). She held that the documents purporting to show the fabrication of DNA evidence could not overcome Petitioner's guilty plea because the bulk of the documents were dated after Petitioner's plea was entered. She further held that Petitioner's statements before the state court established that his plea was knowing and voluntary because during the plea proceeding, he acknowledged the DNA evidence implicating him and stated that his counsel and investigator had completed all tasks that he asked of them. The Court found that these statements carried a strong degree of verity and posed a formidable barrier in any subsequent collateral proceedings. She also denied Petitioner's request for discovery and for an evidentiary hearing because the Exculpatory Documents lacked any indicia of reliability.

Petitioner appealed, and the Eighth Circuit denied a certificate of appealability on Petitioner's claims of claims of ineffective assistance of counsel and involuntary plea, but granted a certificate with respect to Petitioner's claim of prosecutorial misconduct. ECF No. 50. On appeal, the Eighth Circuit held that the district court erred when it failed to analyze whether Petitioner could receive an evidentiary hearing based on the documents submitted. It opined that:

> [Petitioner's] allegations are serious, and there are no obvious facial

---

[2] This case was initially assigned to the Honorable Carol Jackson. Upon her retirement, this case was reassigned to the undersigned on September 1, 2017. ECF No. 55.

- 5 -

infirmities in the documents [Petitioner] presented to support those allegations. Accordingly, because the district court did not first decide whether [Petitioner] was entitled to an evidentiary hearing to authenticate his documents, the district court erred by denying his petition on the merits simply because the documents are unauthenticated.

ECF No. 52. On remand, the Eighth Circuit directed this Court to consider whether Petitioner may receive the evidentiary hearing he sought. The Eighth Circuit did not, however, issue any opinion on the merits of the Court's determination.

Upon remand, the Court, on August 27, 2017, appointed counsel to represent Petitioner. ECF No. 57. Thereafter, on March 20, 2018, the undersigned granted Petitioner's request for an evidentiary hearing and gave Petitioner additional time to obtain the discovery required to authenticate the Exculpatory Documents. ECF No. 75. Respondent argued that the authenticity of Petitioner's Exculpatory Documents was refuted by the DNA casefile (ECF No. 69-1, 91-1) and the affidavit of Karlyn Rensing, the forensic scientist who performed the DNA examination and testing in Petitioner's case in 2009 (ECF No. 69-2). In her affidavit, Rensing described testing the DNA taken from the cap found at the crime scene. She stated that she did not recognize the handwritten notes contained among the Exculpatory Documents, that those notes were not present in the casefile, and that if they had been added to the casefile, they should have been noted on the DNA casework activity log in form (which they were not). She also noted some "glaring" irregularities between Petitioner's exhibits and the original police case file that cast doubt on their authenticity. ECF No. 69-2 at ¶ 8. Specifically, she identifies irregularities in the naming conventions for DNA case numbers, as well as some factual mistakes contained in the DNA reports.

On October 11, 2018, the Court held an evidentiary hearing on the authenticity of the Exculpatory Documents, at which Petitioner was represented by counsel. Petitioner's counsel stated that he sent supplemental discovery requests to the St. Louis County Police Department in an effort to identify: (1) the person who provided Petitioner with the Exculpatory Documents, identified only as "CD;" and (2) the author of the internal memos that document the police department's attempts to frame Petitioner with DNA evidence, identified only as "Walla." Counsel stated that he was unable to obtain the information sought, but learned that the skull cap containing the DNA evidence had been destroyed. He argued that the destruction of the skull cap rendered Petitioner unable to prove his actual innocence. The parties thoroughly argued the issue of spoliation and the impact of the destruction of the skull cap on Petitioner's habeas petition.

## DISCUSSION

a. **Exculpatory Documents**

Petitioner is attempting to expand the record to include new evidence that was not part of the record before the state court. *See, e.g., Williams v. Wallace*, 4:14-cv-00412-SNLJ-SPM, 2017 WL 769890 (E.D. Mo. 2017). Under Rule 7 of the Rules Governing § 2254 Cases, a federal habeas court may permit expansion of the record to include additional materials, including documents. *Id.* (citing Rule 7(a)-(b)). The judge may require the materials be authenticated, and the judge must require the party against whom the additional materials are offered the opportunity to admit or deny their correctness. *Id.* (citing Rule 7(c)).

Here, the Court gave Petitioner the opportunity to conduct additional discovery on the Exculpatory Documents and held an evidentiary hearing.  However, Petitioner failed to present any evidence to authenticate the Exculpatory Documents themselves, and counsel for Petitioner represented that despite his efforts, he had been unable to authenticate the documents.  Instead, he argued that the skull cap containing the relevant DNA evidence had been destroyed, so he was unable to prove his innocence, and he sought sanctions for spoliation of evidence.

The Exculpatory Documents alone do not contain any indicia of reliability.  Further, the unexplained differences between Exculpatory Documents and the original case file provided by Respondent cast further doubt on the authenticity of the Exculpatory Documents.  Specifically, Respondent offered unrefuted evidence that the Exculpatory Documents were altered, namely through the affidavit of Ms. Rensing, who identified several irregularities between the two sets of documents, which Respondent was unable to explain.  Lastly, the Exculpatory Documents relied upon by Petitioner include the affidavit of co-defendant Leachman, who stated that he "took the black skull cap off [Petitioner's] couch" before the robbery, but that he "didn't know if the skull cap was [Petitioner's] or [Petitioner's] wife or sons."   This is wholly inconsistent with Petitioner's theory that the Exculpatory Documents prove that the DNA evidence was fabricated.  To the contrary, Leachman's affidavit implies that it may well have been Petitioner's cap at the scene of the crime.   Thus, Petitioner failed to meet his burden to expand the record to include the Exculpatory Documents.

On November 5, 2018, Petitioner filed a pro se motion to authenticate the Exculpatory Documents. ECF No. 99. In his motion, Petitioner highlights those portions of the Exculpatory Documents that he believes are most beneficial to his case. However, he does not provide the Court with any additional evidence to support the reliability or authenticity of the documents. Therefore, after careful review and upon due consideration, the motion to authenticate exculpatory documents will be denied.[3]

**b. <u>Procedural Default</u>**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011). Here, Petitioner concedes that Grounds One, Two, Three, and Four of his habeas petition were never presented to the state court and are procedurally defaulted.

**1. <u>Cause and Prejudice</u>**

In order to satisfy the "cause" requirement, Petitioner must demonstrate that some external impediment prevented him from presenting his claim in a timely and procedurally proper manner. *See Bell v. Attorney General of State of Iowa*, 474 F.3d 558, 561 (8th Cir.

---

[3] Petitioner sought to expand the record with newly discovered evidence in another habeas case arising out of his conviction of a robbery at a Hardee's. Those documents were purportedly sent to Petitioner after being discovered in a closet at the police department. The Court found numerous irregularities and held the documents were not sufficiently authenticated to be permitted. *Williams v. Wallace*, 4:14-cv-412-SNLJ-SPM, 2017 WL 782511, at * 4-5 (E.D. Mo. Jan. 23, 2017), cert. of appealability denied, 2017 WL 4083600 (Jul. 26, 2017).

2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner."); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (holding that cause must be something external to the petitioner that cannot be fairly attributable to him and citing as an example that some interference by officials made compliance impracticable).

In the context of exculpatory evidence, the suppression of potentially exculpatory documents in violation of *Brady* constitutes a cause sufficient to overcome procedural default. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). However, "unless those documents were 'material' for *Brady* purposes, their suppression [does] not give rise to sufficient prejudice to overcome the procedural default." *Id*. In other words, Petitioner "must convince [the Court] that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.*

Here, Petitioner asserts that he could not bring his prosecutorial misconduct claims because he did not obtain the Exculpatory Documents until his state court proceedings had concluded. This is sufficient to establish cause to overcome procedural default. However, for the reasons stated above, Petitioner fails on the prejudice prong because he cannot show that the result of any trial in his case would have been different if the unauthenticated Exculpatory Documents had been disclosed to him. Specifically, under the Federal Rules of Evidence, unauthenticated documents cannot be used at trial, and there is no evidence to support that Petitioner could have authenticated the documents had he obtained them sooner. *See* Fed. R. Ev. 901. Accordingly, Petitioner is unable to establish cause and prejudice to avoid procedural default.

## 2. **Fundamental Miscarriage of Justice**

To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence. *Schlup v. Delo,* 513 U.S. 298, 321 (1995). The Supreme Court has held that:

> [A] petitioner who raises a gateway claim of actual innocence must satisfy a two-part test. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The actual innocence exception requires review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result.

*Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (internal citations, quotations, and alterations omitted).

Few petitions are "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup,* 513 U.S. at 315 (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The Supreme Court set forth the following standard of proof that governs review of actual innocence claims:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Id.* at 324 (emphasis added).

Here, when given the opportunity to conduct discovery and have an evidentiary hearing, Petitioner was unable to authenticate the Exculpatory Documents or present any evidence in support of their reliability. The documents therefore cannot constitute "new

reliable evidence." Accordingly, Petitioner's claims one through four are procedurally barred.

Moreover, even if Petitioner could somehow present his procedurally defaulted claims to the Court, he would not prevail. Judge Jackson addressed the merits of Petitioner's claims in her Order dated May 26, 2016, and the Court fully agrees with that analysis. As such, the Court incorporates by reference the law and reasoning set forth in that Order and finds that Petitioner failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of facts in light of the evidence presented in the state court proceedings. *See Williams*, 2016 WL 3015162, at *6; 28 U.S.C. § 2254(d).

Similarly, the Court finds that Petitioner is not entitled to relief based on claims of ineffective assistance of counsel, for the reasons stated in Judge Jackson's prior Order, and incorporates by reference the law and reasoning set forth in that Order denying habeas relief for Petitioner's ineffective assistance of counsel claims (claims 5 and 6). *Id.*

  c. **Spoliation Sanction**

As a final matter, Petitioner asks the Court to impose a sanction against Respondent for the destruction of the skull cap, which Petitioner claims contained exculpatory evidence. "A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). In the context of a criminal prosecution, a

defendant challenging the destruction of exculpatory evidence must make a showing of official animus toward the defendant or a conscious effort to suppress exculpatory evidence that would be sufficient to establish a due process violation. *Id.* at 488 (holding that the officers, in destroying breathalyzer evidence, were acting "in good faith and in accord with their normal practice").

In a civil lawsuit, a spoliation-of-evidence sanction requires a finding of intentional destruction indicating a desire to suppress the truth. *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (internal citations and quotations omitted). "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.,* 373 F.3d 896, 902 (8th Cir. 2004).

Here, Petitioner's state post-conviction proceedings concluded on December 29, 2011. It is undisputed that the skull cap was destroyed on January 7, 2014, as part of an annual purge of property. ECF No. 91-2 at 20. In other words, the skull cap was destroyed three years after Petitioner's state proceedings were completed, and well after the deadline for Petitioner to file a federal habeas petition. Thus, assuming that the civil spoliation standard would apply to a habeas petition, Petitioner cannot establish that the skull cap was intentionally destroyed with a desire to suppress the truth. Under the criminal standard, the evidence shows that the skull cap was destroyed in good faith and in accordance with normal purge protocols. Accordingly, the Court will deny Petitioner's request for a sanction based on spoliation of evidence.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (standard for issuing a Certificate of Appealability) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Andre Williams, Sr., for a writ of habeas corpus relief is **DENIED**. ECF No. 1.

**IT IS FURTHER ORDERED** that Petitioner's motion authenticating newly-discovered evidence is **DENIED**. ECF No. 99.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued. A separate Judgment shall accompany this Memorandum and Order.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　AUDREY G. FLEISSIG
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated this 14th day of November, 2018.